UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA J. M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-00421-JPH-MG |
| | ) |
| LELAND C. DUDEK,[2] | ) |
| | ) |
| Defendant. | ) |

**ORDER SUSTAINING COMMISSIONER'S OBJECTION AND OTHERWISE ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the Social Security Administration's decision denying her disability benefits. Magistrate Judge Mario Garcia entered a Report and Recommendation recommending that the Court reverse this decision and remand for further proceedings. Dkt. 17. The Commissioner objects to the recommendation as to the ALJ's decision regarding Plaintiff's manipulative limitations. Dkt. 18. While the Court concludes that the ALJ provided substantial evidence to support that finding and therefore **SUSTAINS** the Commissioner's objection, dkt. [18], the Court otherwise **ADOPTS** the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Michelle King as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Report and Recommendation, dkt. [17]. The Commissioner's decision to deny disability benefits is **AFFIRMED**.

## I.
## Facts and Background

Plaintiff applied for disability insurance benefits in January 2022, alleging that she had been disabled since December 2021. Dkt. 9-2 at 24. Plaintiff's application was initially denied on April 26, 2022, and denied upon reconsideration on September 20, 2022. *Id.* The Administrative Law Judge ("ALJ") held a telephonic hearing on February 16, 2023, and denied Plaintiff's claims on April 17, 2023. *Id.* at 24–38. After the appeals council denied review, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g). Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation process found in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 9-2 at 24–38. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity since the application date. *Id.* at 26.

- At Step Two, she had "the following severe impairments: seizure like spells; degenerative disc disease, foraminal stenosis, and radiculopathy of the cervical spine; lumbar stenosis; migraine headaches; obesity; and learning disability." *Id.* at 27.

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 28.

- After Step Three but before Step Four, she had the residual functional capacity ("RFC") to perform "light work . . . except she can occasionally lift and carry twenty pounds; she can frequently lift and carry ten pounds; her ability to push and pull is unlimited except for

    the weights indicated.  She can stand or walk for up to six hours of an eight-hour workday and she can sit for up to six hours in an eight-hour workday.  She can occasionally climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl.  She can never have exposure to unprotected heights or hazardous machinery.  She has the ability, on a sustained basis, to understand, carryout, and remember simple instructions.  She is able to make judgements commensurate with functions of simple repetitive tasks.  She can respond appropriately to brief supervision and interactions with coworkers and work situations.  She can deal with occasional changes in a routine work setting.  She can frequently reach, handle, finger, and feel with her bilateral upper extremities."  *Id.* at 30–31.

- At Step Four, Plaintiff "is unable to perform any past relevant work." *Id.* at 36.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform," including storage facility rental clerk, marker, and cleaner housekeeping.  *Id.* at 37–38.

Plaintiff sought judicial review, arguing that (1) the ALJ erred in assigning the Light RFC with frequent reaching, handling, fingering, and feeling given evidence of Plaintiff's carpal tunnel syndrome and difficulty using her hands; (2) the ALJ failed to support the mental RFC restrictions; and (3) the ALJ's subjective symptom analysis was patently wrong.  Dkt. 12.  Magistrate Judge Garcia issued a Report and Recommendation recommending that the ALJ's decision should be affirmed on the mental RFC restrictions and subjective symptom analysis but reversed and remanded for further proceedings on the physical RFC restrictions.  Dkt. 17.  The Commissioner has

3

objected to Magistrate Judge Garcia's recommendation as to the physical RFC restrictions.[3]  Dkt. 18.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019).  When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

---

[3] Neither party objected to Magistrate Judge Garcia's recommendations as to the mental RFC restrictions or the subjective symptoms analysis.  To the extent either party challenges those recommendations now, those arguments are waived.  *See* dkt. 17 at 17–18 (warning parties that "[f]ailure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure"); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 516 (7th Cir. 2007).

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g).

    The district court will affirm the benefit denial if the ALJ committed no legal error and substantial evidence supports the ALJ's decision. *Stephens*, 888 F.3d at 327. "Substantial evidence is relevant evidence that a reasonable mind could accept as adequate to support a conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, courts "will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021).

    "The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations." *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)). If a party objects to the recommendation, the "district judge must determine de novo any part of the

5

magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C).

## III.
## Analysis

Plaintiff contends that in determining her physical RFC, the ALJ did not explain why Plaintiff could perform reaching, handling, fingering, and feeling "frequently" rather than only "occasionally."  *See* dkt. 12 at 8–13; dkt. 16 at 5–8; dkt. 19 at 2–7.  Magistrate Judge Garcia agreed and recommended that the Court reverse the ALJ on this basis.  Dkt. 17 at 8.  The Commissioner objects to that recommendation.  Dkt. 18.

A claimant's RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).  The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7; *see Jeske*, 955 F.3d at 595 ("Social Security Ruling 96-8p, . . . binds all components of the Social Security Administration.").  The assessment must also address the claimant's "remaining exertional and nonexertional capacities."  SSR 96-8p, 1996 WL 374184, at *5.

Handling limitations fall within a "nonexertional capacity."  *Id.* at *5–6.  "[A]lmost all jobs" require "handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands)."  *Herrmann v.*

6

*Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (quoting SSR 85-15, 1985 SSR LEXIS 20, at *18–19).  "Significant limitations of . . . handling, therefore, may eliminate a large number of occupations a person could otherwise do."  *Id.* "Frequent" handling would be handling performed between one-third and two-thirds of the workday (up to around six hours in a normal workday).  *See* SSR 83-10, 1983 WL 31251, at *6.  In contrast, "occasional" means work performed very little to, at most, one-third of the workday (around two hours of an eight-hour workday).  *Id.* at *5.

    Here, the ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 416.967(b) except . . . [s]he can frequently reach, handle, finger, and feel with her bilateral upper extremities."  Dkt. 9-2 at 30–31.  For that determination, the ALJ relied on the opinions of Dr. Sands, Dr. Whitley, and Dr. Radthrod.  Dkt. 9-2 at 36.  Also, in reviewing the medical evidence, the ALJ assessed Plaintiff's carpal tunnel syndrome and arthritis at Step 2 and concluded that "these conditions cause no more than minimal functional limitations and are not severe."  *Id.* at 27 (citing dkt. 9-7 at 48, 92, 144).  Ultimately, the ALJ concluded that while Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Dkt. 9-2 at 31.  To build a logical bridge, the ALJ had to connect the evidence (Plaintiff's testimony, treatment notes, neurologic and physical exams, Plaintiff's activities, and consultant testimony) with his conclusion that Plaintiff

7

could perform frequent reaching, handling, fingering, and feeling. *See Jeske*, 955 F.3d at 587.

In his Report, Magistrate Judge Garcia recommends that the Court reverse the ALJ's decision and remand for further proceedings to provide support for any functional limitation for frequent handling and fingering. Dkt. 17 at 8. Magistrate Judge Garcia reasoned that "it is not clear from the ALJ's findings what evidence supports his finding that Rebecca M. could *frequently* use her arms and hands," and that "the ALJ failed to provide a logical bridge between the evidence provided and his RFC findings" because he "did not provide any medical opinions or evidence to bridge the gap between Rebecca M.'s reports, the medical evidence, and his findings." *Id.*

In objecting to that recommendation, the Commissioner contends that Magistrate Judge Garcia held the ALJ to "too high of an articulation standard" and that the ALJ "provided substantial evidence that Plaintiff could frequently use her hands and fingers in the workplace." *See* dkt. 18 at 1–2. The Commissioner also argues that "[e]very medical source concluded that Plaintiff was able to use her hands *constantly* in the workplace," so "[t]hese opinions necessarily provided support for the ALJ's finding that she could use her hands only *frequently* in the workplace." *Id.* at 2. Plaintiff responds that the ALJ failed to build a logical bridge as he does not explain how Plaintiff's abnormal diagnostic testing and reports of her symptoms[4] are consistent with his finding

---

[4] Plaintiff lists the following ten symptoms: (1) pain in her neck and back that radiates to both arms, (2) hand numbness, (3) tingling in hands, (4) cramping in hands, (5) difficulty typing or writing, (6) inability to use her hands, (7) arthritis in hands, (8)

8

that Plaintiff could use her hands frequently, instead of occasionally, in the workplace. Dkt. 19 at 4–6. She also argues that the ALJ "essentially rejected" the opinions of Dr. Sands, Dr. Whitley, and Dr. Radthrod "by imposing manipulative restrictions that they did not." *Id.* at 3–4 (emphasis removed).

The Court concludes that the ALJ's decision provided substantial evidence to support his finding regarding the functional limitation for frequent handling and fingering. First, the ALJ considered Plaintiff's symptoms and the diagnostic imaging which she raises. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at 31, 34–35. And the ALJ cited to the diagnostic imaging to which Plaintiff refers when he assessed Plaintiff's carpal tunnel syndrome and arthritis. Dkt. 9-2 at 27 (citing dkt. 9-7 at 18). In concluding that "these conditions cause no more than minimal functional limitations and are not severe," the ALJ found that "the record does not demonstrate ongoing treatment or limitations from these conditions," and that Plaintiff "has been found with normal strength in her upper and lower extremities including with full grip strength." *Id.* at 27 (citing dkt. 9-7 at 48, 92, 144).

Additionally, as the Commissioner noted, the ALJ cited the opinions of Dr. Sands and Dr. Whitley, who also reviewed this diagnostic testing. Dkt. 9-2 at 35 (citing dkt. 9-3; dkt. 9-7 at 144). The ALJ found that Dr. Sands and Dr.

---

ineffectiveness of arm braces prescribed for bilateral cubital tunnel worn at night, (9) trouble sweeping and doing dishes because of hand cramps, and (10) upper extremity numbness, tingling, weakness, and pain. *See* dkt. 19 at 5.

Whitley's opinions were "consistent with the medical record of evidence" showing that Plaintiff had "normal strength and . . . full range of motion in her upper and lower extremities." *Id.* And Dr. Radthrod's opinion concluded that Plaintiff "would not have difficulties performing activities involving both hands like writing, zipping, buttoning or using computers, office stationery, or any office equipment," which the ALJ found was also "consistent with the medical evidence." *Id.* The ALJ was entitled to rely on their opinions. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Barrett v. Saul*, 822 F. App'x 493, 497 (7th Cir. 2020). So, by explaining his reliance on these opinions, the ALJ built a logical bridge between this evidence and his conclusion that Plaintiff can frequently use her hands in the workplace. *Jeske*, 955 F.3d at 587.

Next, Plaintiff contends that the ALJ's imposition of the more restrictive "frequent" RFC limitation, which was not recommended by any of the medical opinions on which he relied, meant the ALJ rejected those medical opinions. Dkt. 16 at 5–6; dkt. 19 at 3–5; *see* dkt. 9-2 at 30–31, 35. Not so. The ALJ explicitly found these opinions to be persuasive. Dkt. 9-2 at 35. Also, the Seventh Circuit has affirmed ALJs' decisions as supported by substantial evidence when the ALJ assessed more restrictive limits than did any of the reviewing physicians' opinions. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021); *Rice*, 384 F.3d at 370; *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" (quoting *Rice*, 384 F.3d at 370)).

10

For a similar reason, the ALJ's decision is not undermined by his choice to assign a "frequent" RFC instead of the more restrictive "occasional" RFC. "The lack of an opposing medical opinion makes it difficult" for the Court "to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023). "The ALJ's careful consideration is shown by the fact that he departed" from the physicians' opinions by assigning a more restrictive RFC. *Id.* Part of that consideration involved assessing the symptoms Plaintiff reported. *See* dkt. 9-2 at 31. But contrary to her argument that the ALJ ignored these symptoms, *see* dkt. 19 at 5–6, the record suggests that "[i]t was because of and not in spite of [Plaintiff's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

Taken all together, the ALJ supported with substantial evidence his conclusion that Plaintiff can frequently use her hands in the workplace. The ALJ's conclusion was based on "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek*, 587 U.S. at 103, which the Court will not re-weigh, *Tutwiler*, 87 F.4th at 860. Accordingly, the Court sustains the Commissioner's objection to Magistrate Judge Garcia's recommendation on this issue and affirms the ALJ's decision.

# IV.
# Conclusion

The Court **SUSTAINS** the Commissioner's objection regarding the Report's manipulative limitations recommendation, dkt. [18]. The Court otherwise **ADOPTS** the Report and Recommendation, dkt. [17].[5] Thus, the Court **AFFIRMS** the ALJ's decision to deny disability benefits.

**SO ORDERED.**

Date: 3/27/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[5] To the extent Magistrate Judge Garcia recommended that on remand the ALJ "should consider explicitly including the factors listed at the second step of the subjective symptom analysis," that recommendation is now moot because the ALJ's decision has been affirmed in its entirety.